### NATIONAL BANK OF SANFORD v. JAMES MARSHBURN. AND C. H. COBB, TRUSTEE.

(Filed 19 May, 1948.)

**1. Bills and Notes § 18—**

A person who accepts a check for a pre-existing debt owed him by the maker is a purchaser for value. G. S., 25-30; G. S., 25-192.

**2. Same—**

The fact that the payee of a check knows that the maker has no funds on deposit with the drawee bank for payment at the time of its execution, and accepts it upon representations of the maker that he would have funds in the bank for payment at a later date certain, does not alter the payee's *status* as a *bona fide* holder.

**3. Banks and Banking § 8a: Money Received § 1—Bank paying check under mistake as to identity of drawer may not recover from payee without fault.**

The drawee bank paid a check under a mistake of fact that the maker was its depositor having a large amount of money to his credit, whereas in fact the maker was another person of the same name without funds on deposit. The payee, a holder in due course, acted in good faith in taking, presenting, and collecting the check and was without fault in causing or contributing to the drawee bank's mistake, and was without knowledge that its payment was made under a mistake. *Held:* The maker being insolvent, the drawee bank is not entitled to recover the amount from the payee upon the theory of unjust enrichment, but the bank must suffer the loss for the same reasons that it would be liable if the signature to the check had been a forgery.

APPEAL by the defendant, C. H. Cobb, Trustee, from *Burgwin, Special Judge,* at the December Term, 1947, of LEE.

The action reached the Superior Court on an appeal from a judgment of a justice of the peace, and was submitted to the judge in the Superior Court upon a case agreed. The determinative facts are set forth below.

On 16 February, 1947, James Marshburn drew a check for $155 on the plaintiff, National Bank of Sanford, payable to the order of the defendant, C. H. Cobb, Trustee, who accepted it in satisfaction of a pre-existing debt of Marshburn. At the time of its delivery, Marshburn informed the defendant, C. H. Cobb, Trustee, that he did not have funds on deposit with the plaintiff to meet the check, but that he would have funds on deposit with the plaintiff to pay it on and after 1 March, 1947. Pursuant to this information, the defendant, C. H. Cobb, Trustee, held the check until on or about 17 March, 1947, when he presented it to the plaintiff for payment through the agency of other banks. The plaintiff thereupon paid the amount of the check through such banks to the defendant, C. H. Cobb, Trustee, who received the payment without reason to know that it was made by the plaintiff under the mistake hereafter specified. The defendant, C. H. Cobb, Trustee, still has the money in his custody.

James Marshburn, the drawer of the check, never had any funds on deposit with the plaintiff at any time. But another person bearing exactly the same name had substantial funds on deposit with the plaintiff when the check was presented to it for payment. The plaintiff paid the check to the defendant, C. H. Cobb, Trustee, because of a mistaken belief on its part that the signature of James Marshburn, the drawer of the check, was that of James Marshburn, its depositor, and charged the amount of the check against the account of the latter. At the end of the month, however, the plaintiff discovered its mistake, credited the account of James Marshburn, its customer, with the amount of the check, and made immediate demand upon James Marshburn, the drawer of the check, and upon the defendant, C. H. Cobb, Trustee, for restitution of the sum paid. by it to the latter on account of the check.

As the demand for restitution proved unavailing, the plaintiff brought this action against James Marshburn, the drawer of the check, and the defendant, C. H. Cobb, Trustee, before a justice of the peace, and obtained judgment against them for the $155 with interest from 17 March, 1947. The defendant, C. H. Cobb, Trustee, appealed from this judgment to the Superior Court. James Marshburn, the drawer of the check, did not join in the appeal. But he has since died insolvent, and the judgment rendered against him by the magistrate is uncollectible.

The trial judge concluded upon the case agreed that the defendant, C. H. Cobb, Trustee, had been unjustly enriched at the expense of the plaintiff to the extent of the payment made on the check, and entered judgment accordingly. The defendant, C. H. Cobb, Trustee, thereupon appealed to this Court.

*J. G. Edwards for plaintiff, appellee.*

*E. C. Bryson for defendant, C. H. Cobb, Trustee, appellant.*

ERVIN, J.    The case at bar is somewhat novel in origin.    Fundamentally, however, it presents for decision the perplexing problem constantly recurring in various guises as to which one of two innocent parties must bear a loss occasioned by some third person.

It is well to note here the circumstances under which the defendant, C. H. Cobb, Trustee, acquired and collected the check.    Since the paper was a negotiable instrument, and since he took it in payment of an antecedent or pre-existing debt, he purchased it for value within the meaning of the negotiable instruments law.    G. S., 25-30; G. S., 25-192; *Manufacturing Co. v. Summers,* 143 N. C., 102, 55 S. E., 522; *Mauney v. Coit,* 80 N. C., 300, 30 Am. Rep., 80; *Reddick v. Jones,* 28 N. C., 107, 44 Am. Dec., 68.    He acted in the utmost good faith in taking, presenting, and collecting the check.    His status as a *bona fide* holder was not altered in any way by his knowledge that there were no funds on deposit with the plaintiff to meet the check at the time he accepted it.    The check was to be presented for payment at a time when it was represented that such funds would be available in the plaintiff bank.    *Johnson v. Harrison,* 177 Ind., 240, 97 N. E., 930; 10 C. J. S., Bills and Notes, section 331; 8 C. J., Bills and Notes, section 720.    The case agreed shows that the defendant, C. H. Cobb, Trustee, was not guilty of any fault causing or contributing to the plaintiff's mistaken belief as to the identity of the drawer of the check.    And, finally, he received the money in suit without any reason to know that its payment was made by the plaintiff bank under a mistake.

When all is said, our case comes to this: Should a drawee bank be permitted to recover back from an innocent holder for value money paid by it to such holder upon a check because of its mistaken belief that the signature of the drawer on the check was that of a depositor bearing the same name?

The plaintiff insists that this question should be answered in the affirmative because of the general principle of law that money paid under a mistake of fact may be recovered from the payee by a payer who was under no legal obligation to make the payment.    *Harrington v. Lowrie,* 215 N. C., 706, 2 S. E. (2d), 872; *Sparrow v. Morrell & Co.,* 215 N. C., 452, 2 S. E. (2d), 365; *Morgan v. Spruill,* 214 N. C., 255, 199 S. E., 17; *Simms v. Vick,* 151 N. C., 78, 65 S. E., 621, 24 L. R. A. (N. S.), 517, 18 Ann. Cas., 669.

The plaintiff's position finds support in cogent arguments.    Nevertheless, our study of the conflicting considerations involved leads us to the opposite conclusion.    Consequently, we hold that the question at issue ought to be answered in the negative.

The case agreed contains no intimation that the debtor, James Marshburn, drew the check giving rise to this litigation with any intent other than the honest one of having funds on deposit with the plaintiff bank to cover the check on its presentation for payment on or after 1 March, 1947. Yet, the factual situation is in essence the same as it would have been if the drawer, James Marshburn, had deliberately forged the signature of the depositor, the other James Marshburn, upon the check. This is true because the plaintiff bank paid the money in suit to the defendant, C. H. Cobb, Trustee, on account of its mistaken belief that the signature of the drawer, James Marshburn, appearing on the check was the genuine signature of its depositor, the other James Marshburn. Hence, it seems that in the absence of an exact precedent to guide us this case ought to be governed by the rule regulating the right of a drawee bank to recover back money paid by it upon a forged check to a *bona fide* holder for value and without fault.

As the textwriter in 7 Am. Jur., Banks, section 576, has so well said, it "has been established beyond dispute that a drawee of a check upon which the signature of the drawer is forged cannot recover the amount paid thereon to a *bona fide* holder for a valuable consideration who is without fault in taking or negotiating the paper." See, also, the following authorities to the same effect: 12 A. L. R., 1089-1116; 14 A. L. R., 496; 71 A. L. R., 337-345; 121 A. L. R., 1056-1062; 9 C. J. S., Banks and Banking, section 357; 7 C. J., Banks and Banking, section 417; Restatement of the Law of Restitution, section 33. This Court has recognized the soundness of this rule. *Bank v. Trust Co.,* 168 N. C., 605, 85 S. E., 5, L. R. A. 1915D, 1138; *Woodward v. Trust Co.,* 178 N. C., 184, 100 S. E., 304, 5 A. L. R., 1561.

It has been said that the rule here considered is an exception to the general principle allowing recovery of money paid under mistake, and that it is "eminently fair and just, in the absence of fault or neglect on the part of the holder of a check to require the bank on which it is drawn to determine at its peril whether the signature of the maker is genuine, for it always has, or is supposed to have, knowledge on that subject and means of determining the question with reasonable certainty and safety, while the holder . . . may be, and often is, an entire stranger to the maker, having no knowledge or information as to the genuineness of the signature, and no convenient means of obtaining it." *Williamson Bank v. McDowell County Bank,* 66 W. Va., 545, 66 S. E., 761, 36 L. R. A. (N. S.), 605. Often the "suggestion is made that the rule arises out of considerations of convenience as well as of commercial necessity; for it is said, throughout the entire business world bills of exchange and checks in large part serve as currency in each day's business transactions, and it is not only convenient but necessary that there shall be a definite time and a fixed place for final settlement, and that

the best time and most appropriate place for such final settlement is the time and place when and where an instrument is presented to the drawee for payment." *First Nat. Bank v. United States Nat. Bank of Portland,* 100 Or., 264, 197 P., 547, 14 A. L. R., 479. As the writer of the annotated article in 12 A. L. R., 1089-1116, has aptly declared, this rule "is absolutely necessary to the circulation of drafts and checks, and is based upon the presumed negligence of the drawee in failing to meet its obligation to know the signature of its correspondent. Conditions would be intolerable if the retiring of commercial paper through its payment by the drawee did not close the transaction, but it was possible at an indefinite time in the future to reopen the matter, and recover the money, if the paper proved to have been forged. No one would dare handle it, and it would pass out of use regardless of its convenience or necessity as a part of the life of business."

These reasons apply with equal compulsion to the payment of a check by the drawee bank under the circumstances disclosed by the record here presented. The judgment of the Superior Court is reversed and the cause is remanded to such court for judgment in accordance with this opinion.

Reversed.